Good morning, Your Honor. May it please the Court, my name is Jim Van Ness. I am counsel for Edward Bollinger. This is the appellant's second trip back to this Court on the issue of qualified immunity. The Court did ask us to brief in supplemental form the issue of the law of the case. I would like to discuss that briefly before moving on to the more substantive issues. It's Pelley's contention that the first panel's opinion left open the question of revisiting qualified immunity in a summary judgment context. We don't quibble with that statement. That is what the panel said. The problem with it is that the first opinion rendered by the district court is virtually identical to the second in that it's just a rehash, a very straightforward statement of what the doctrine of qualified immunity is and what a plaintiff must do to defeat that. There's no substantive analysis. There's no discussion of the evidence presented. And consistent with this Court's rulings considering when the law of the case is defeated, there are three exceptions. And the last one is probably the most instructive, and that is the fact that different evidence was deduced later on, for instance, in the summary judgment proceeding. And this- Can we stop right there because that's key? I've reviewed, I think, everything that was submitted. I've reviewed the memorandum in support of the summary judgment, and there is also some factual recitation that went along with that. Is that correct? That's correct. And in that, it seems as though there's mostly legal argument and mostly recitation or repetition of the facts that were in the complaint. Now, have I missed something? No, it's pretty much a rehash of what was presented under the motion to dismiss. Exactly. And so if that's the case, we had a 12B motion to dismiss based upon a defense of qualified immunity. The Court, on page 4 of our decision-well, it might not be page 4, but it's one of the drafts I saw. But anyway, at one point, just before the conclusion, there was a complete analysis of the court's summary of a sauté analysis, including the relevant question of determining whether Wright was clearly established and whether it was clear that a reasonable officer in his conduct was unlawful in the situation confronted. Now, what more do we have to look at? Well, the judge that we further went on and said that this was a premature block and that perhaps the defense may or may not have some viability at a later stage of the proceedings. Well, at the later stage of the proceedings, the same things that were presented in the 12B were presented in summary judgment. And I don't know that I can see any new facts. The law may be new or further argued, but why shouldn't there be issue of preclusion here? How many times can you raise qualified immunity under the same issues and the same facts? And that is precisely Appellant's argument. And this Court — Did I miss something? No. No. And the only analogy I was going to draw, that in this Court, in I believe it was 1985, and we cited the case, it was Huballi Bank. It was a very similar case that a 12B6 motion was brought. It went before the court of appeals. It was remanded to the district court. Summary judgment proceeding was brought. And the second panel said that the judge was free to depart under the law of the case if new evidence was adduced. What about the state's position, maybe fallback position, that, well, you've waived that issue? We don't believe we've waived that because we haven't stated it. Well, you never raised it. We haven't stated it as the law of the case, but we have raised the issue of the binding effect of the Oregon Supreme Court and court of appeals analysis of this issue at that level. Well, I don't believe we may not have called it the doctrine of law of the case, but we certainly have raised the issue that this, we raised it before the district court. It was raised in the summary judgment proceedings. So it's part of the record before this Court. Well, maybe then we go to the next question. Being this Court's response has raised this issue, how would you urge us to go there? In other words, why should we go into this issue? If you've not specifically stated it, it's quietly there, how would you suggest this Court approach it? I would suggest that the Court approach it as a matter of if it's the law in this circuit, I believe the Court can raise it sua slante, that while it's not raised directly in the opening brief, it was in the pleadings before the district court. As I said, it's part of the record. The record in this case, it's in the excerpts of record. So from that standpoint, the issue has been in play from the time that the first panel made its decision to this day. All right, now, we took a lot of time on this law of the case issue. You don't have too much time left. And to me, you know, of the two prongs of the qualified immunity question, I think everybody agrees with this, the real issue in this case, if we get to the merits, is whether or not, you know, the law was clearly established at the time, right? That's correct. What's your position on that? There's two arguments I would advance, and we have advanced them in the briefs, but I'd like to touch on them. One is the fact that the statute that was in effect at the time that Bollinger committed his crime allowed the parole board to set conditions for parole, present that to the inmate for his acceptance. Implicit in that is his rejection if they don't want the conditions. Now, that statute was changed a year after Bollinger committed his crime to say that an inmate could not refuse parole. Further, to this day, the statute has been greatly changed that allows the board, it's an ever-evolving process, allows the board very broad discretion to set conditions. So we went from a period where, in essence, it was a negotiation. An inmate could say, no, I do not accept parole on those terms. So the argument is that the law was clearly established and that the Court of Appeals of Oregon and the Supreme Court did not make that a new finding in their decisions in 1995 and 1996. They pointed out that the appellee's arguments, the same appellee in that period, that their arguments simply had no foundation, that they were, I can't think of the term they used. The second issue is this, that if not for the underlying statutory distinction, we certainly know that applying a later enacted statute, the ORS 144-245 sub 3, which wasn't in place in the time when Bollinger committed his crime, we know that applying that retroactively is an ex post facto violation of the law if it increases that person's punishment. And it clearly did that. So we would argue under either looking at the statute, the change in the statute, and what was a clearly established right at the time, or what is a constitutional right not to be subjected to additional punishment because of a change in the statute, that was unquestionably clear, and appellee has conceded that point in both the Oregon Court of Appeals and Oregon Supreme Court arguments. Can I ask you one question about the exactly what the Board did here? They didn't literally apply the later enacted statute you just referred to when they denied his request to remain in custody. They actually, in their, they applied SB 139, which I believe in the briefs is, turns out to be, hold on. Section 4.1c reads, the State Parole Board, prison, shall adopt rules providing for that all prisoners shall serve at least 12 months. In their denial of his request, not, you know, to, when he was seeking to remain in custody, they relied on that statute. It's the one that they cited in their decision. Does that make any difference here? I don't believe it makes any difference because the Senate bill also came after the time that he committed his crime. Right, but they didn't rely on the later act. So in other words, they said that this statute could be applied to him. They said the Senate bill. The Senate bill, well, that was a statute. Could be applied to him. Right. But they didn't give him 12 months. He ended up serving 1,971 days of parole. But could they rely on, was it reasonable for them to rely on this, on this statute? And I think Apelli has argued it was reasonable for them, the fallback position is they could have given him some time, but that's not what happened. If it's, if the question is, could the board have given them him some time versus the balance of his sentence, which they ultimately did, under the existing statutes, even though they were in conflict with this issue of refusing parole, they could have given him, I think it was six months at that time. It was later changed to the 12 months. But at the time that they released him, they could have given him six months, and they did not do that. As I said, he did serve an additional 1,971 days, I believe the record shows. Now, when the district court had the summary and judgment motion before, the district court just didn't have the bare allegations of the complaint. Is that correct? That's correct. It had been supplemented with the depositions of the parole board members. That's correct. And some affidavits, correct? And we learned from those depositions that some of these parole board members had training and knew about ex post facto law. Isn't that correct? That's absolutely correct. So it's not fair to say that the district court just ruled on the allegations in the complaint. No. But it's also not fair to say that what the district court ruled on, because reading the opinion, there was no oral argument, and there's no discussion in the opinion about that evidence that was presented. It's a very perfunctory qualified immunity analysis with no citing to the record or the depositions that you refer to. It just doesn't exist in the opinion. If you compare it to the first opinion and the motion dismissed, they're virtually identical. But nonetheless, the district court had before it a fuller record. It had a fuller record, but I don't believe that the substance of that record had changed one iota since the time of the filing of the complaint. But doesn't the – you know, when you look at qualified immunity, and once you get beyond the first step in the Satie analysis, you ask whether or not a reasonable officer would have believed that his conduct would have been lawful. And you look at the context within which the officer is acting, right? So we're not just here dealing with a pure legal interpretation of the statute. You're looking at what these reasonable parole officers would have known about application of laws that were later enacted after the commission of a crime. You're right, Your Honor. And if you do that here, the supplement, the additional evidence tends to show that in the context of this case, these parole officers knew a lot more. I mean, one of them testified before the legislature that they needed to have the later enacted statute to make it clear that prisoners could not deny their early parole. Was that evidence before the district court during the summary judgment proceeding? Yes, it was. So there was that evidence. All of the evidence was before them. But, again, on the third prong of the Satie analysis, if there is a question or basically a disagreement on a material fact, and I believe there was disagreement on that third prong. Where was the disagreement? The disagreement was that appellant asserted that it wasn't objectively reasonable for them to assert that they could basically ignore what they knew about the state of the law. And I think the appellee was asserting that there's a lower standard, that it's not their own knowledge that's important. It's this mythical, the general reasonable parole board figure as opposed to what these individuals knew. Well, you know, it's not a subjective test, but you look at the context within which these parole board officers were operating at the time they made their decision to deny his request to remain in custody. And that was appellant's argument at the district court level. We don't know what the court did with that because it doesn't show up in their analysis. Thank you. May it please the court, Julie Smith from the Oregon Department of Justice, appearing on behalf of defendants. I'll start. If we jump right in and look at the record on summary judgment, even though the district court had quite a decision on summary judgment, would we find that extra evidence that was not recited in the complaint was produced at the time of the summary judgment proceeding? There's quite a bit of additional evidence. With respect to the law of the case issue, the earlier panel's decision, the earlier Ninth Circuit's panel's decision on this case really just focused on whether on the four corners of the complaint, whether qualified immunity could be determined based on the four corners of the complaint. Well, that complaint alleged that this particular statute, R.S. 144-245-3, the 1985 version of it, the complaint alleged that that had been applied retroactively to this plaintiff. It was the ex-post facto argument. Right. That's his ex-post facto argument. Now, what we've done on summary judgment is, and we all, this was also litigated on the motion to dismiss, but as the panel determined, they were looking at the four Well, as this was litigated in the motion for summary judgment, the parties were able to present evidence providing the context in which this decision was made. What kind of evidence did you produce? That evidence is the Oregon Court of Appeals decision, the Oregon Supreme Court decision, what the statutes were that were in effect at that time. That was all alleged in the complaint? Not all of it was alleged in the complaint or provided in the complaint. It wasn't on the four corners of the complaint. It wasn't clear what law they were operating under. Well, you can take judicial notice of matters outside the complaint, and you can certainly, at the time that this report rendered its decision, it could have taken judicial notice of the state court of appeals decision, Oregon Supreme Court decision. It could, but I think that the That's proper. The crux of the panel's earlier decision on qualified immunity was that it was just premature for them to decide the issue. They didn't accept that. They made a finding or a decision with regard to the Saucier analysis. They said the dispositive inquiry was, and they said, We cannot conclude that it would not be clear to a reasonable official that the retroactive applying the statute to avert Bollinger's unconditionally violate due process rights. So they made a decision based upon the facts of the complaint that under Saucier it wasn't clear. So if that's the case, somehow you've got to clear it up. And all the statutes and all the Oregon case law, or all the Oregon proceedings look like radically presented in the complaint. My question is, what else was presented, as Judge Shishima asked, relative to what was known, what they thought about the law was, and the constitution of the law when they applied this parole decision? And reading the district judge opinion, all he does is rehash the legal analysis. I don't see any new facts relative to that knowledge on that issue, but maybe I've missed something. I have two responses to that question. The first one is that in the summary judgment proceedings, there were depositions that are exhibits to the state's summary judgment motion. And in one of those, it was developed that there was a policy, that the parole board had a policy of ensuring that all inmates were subject to some sort of parole. And that was also alleged in the complaint, I believe. I don't recall if that's the case. I think so. The second response to your question is that the Ninth Circuit's, the first panel's decision in Bollinger 1 didn't decide the precise question that we are analyzing here. They said, We cannot conclude that it would not be clear to a reasonable official that retroactively applying a statute to avert Bollinger's unconditional release would violate his due process rights. What we're alleging here is that under the law, in effect, when he committed his crimes, a reasonable board member could have believed that he never had a right to refuse parole. But that's a legal argument. See, let me tell you why I'm having this trouble. It's my problem. I have a trouble. You brought a defense issue to dismiss the case under 12B-6. You made a decision to bring it then, which was, as we stated, premature. You could have brought it later on in summary judgment, but you decided to move to dismiss. We addressed the issue that you brought to defense, and there's no showing that our prior panel, even though the decision is summary, that we didn't explore all the legal issues. And what you're arguing to me now seems to be a legal issue that was argued before at the time of the 12B-6. And so if you just re-argue the legal issue, how can this court sitting now go against what the prior court did when it decided legal issues? And they specifically said, hey, we reserve the fact that maybe in summary judgment you'll produce some facts. So that's why I'm trying to find what are the facts, not the legal arguments. Right. Well, and my response is that they just reached, they decided a different legal question than what we are arguing at this point. That the legal question they decided was, is retroactively applying a statute, can that violate due process rights? Is it not clear? That's one of the issues he raised here. I'm sorry? That's one of the issues that he raised in this panel and before the district court. But the board's response to that is, well, that depends on what the law, the state of the law was at the time he committed his crimes. And under those statutes, our position is that it was unclear at the time they made this decision in 1994. It wasn't clear until 1999 when the Oregon Supreme Court decided. But that was all subsumed through those facts that are elucidated in the complaint, I thought. I mean, if it's a legal issue, and the facts that were alleged in the complaint raised all those legal issues, unless you raise some new facts, how do we just ignore the 12B? You chose to go to 12B-6. We've got to live with what happened at 12B-6. I don't think we did an idle act when we decided that the 12B-6 would not produce, the defense would not produce a qualified immunity for you. So I'm just trying to figure out how we can redo it. We just don't redo 12B-6s. Well, my position is that, as I mentioned in the supplemental briefing, I don't think that this law of the case doctrine should be applied, in particular in the context of a qualified immunity analysis, because 12B-6 motions are discouraged in that context. Well, that kind of blows Saussure out of the water because Saussure doesn't restrict its demand that we look up as early as we can to whether or not there was actually a violation, which everybody stipulated to, and then going through the analysis. Well, in some cases it will be obvious. In this case, I don't think it was at that point. And I think that's precisely what the prior panel held, was that it was premature. And in this particular case where they took such great pains— Well, are they saying it was premature for you to bring the 12B-6 dismissal? I think that's what they were saying, right? I think they were saying it's premature to address qualified immunity at the 12B-6 stage. And I think— And they cited a case to support that proposition, that typically it is not appropriate to address qualified immunity at the 12B-6 stage. And the other argument, as we pointed out earlier, is that plaintiff— It is not a jurisdictional doctrine. It is a waivable doctrine. It was not raised in the opening brief. It was not raised in the district court on remand from Bollinger 1 panel's decision. How about turning—I'll give you a little more time, but I'd like you to discuss the merits. Merits? Well, I want to— At least the second step of the qualified—second, possibly third step of the qualified— I would like to address those. First, I'd like to begin with a correction of my brief. On page 20 of my brief, I quoted ORS 144.270. I mistakenly cited 144.120. And that makes a difference because 144.270 is the statute that the board members— that the state relied on in the litigation when Bollinger challenged the order, the parole board's order, through the Court of Appeals and in the Oregon Supreme Court. That is the statute we relied on, so I wanted to make sure— Which—just summarize it for me, but I can't remember. It's ORS 144.270. I'm not as familiar with the Oregon statute as you are, and I've read all of it. The statute provides that the board may authorize—I'm sorry, that the parolee shall accept the parole granted. And that is what we argued in both the Court of Appeals and the Oregon Supreme Court meant that the parolee did not have a right to refuse parole. That is— That was the one about the condition. That is one of the several— That was the one about conditions, right? Well, that is what the Oregon Supreme Court concluded by— Right, so it's just about conditions. Right. But that wasn't the statute you relied upon in, you know, when the board denied his—the written decision of the board. I understand that. The whole argument shifted as it moved into the court. Well, the point is, you know, the point is that it wouldn't have been an ex post facto problem if he never had the right to refuse parole in the first place. And so that's why the litigation in the Oregon Court of Appeals and the Oregon Supreme Court shifted to that question. Well, but you offer a different explanation as to why it wasn't the denial of ex post facto. Right. But in a qualified immunity analysis— So, well, what's important, though, what was—what would a reasonable officer have thought at the time? You know, if you were right, I think you do look at the context in which these officers, these parole officers, or for that matter, a street—you know, a police officer on the street. You look at the context of what was going on at the time. So when they denied—in 1994, when they denied his request, if you go back, a reasonable parole officer, I think, would know, you know, how—that at one point in time, they took the position—in fact, they went to the legislature. One of the—they testified in front of the legislature that they needed the 19—what was it? The 1984 or 85 statute? I'd like to address that, actually. You know, they knew. They knew that the parole officer—that the prisoner— The legislative history that you're referring to is actually— It was a corrections official who made that particular statement in front of the legislature. Not a parole board member. And the parole board had no knowledge of that? Well, this is part of a legislative history of a statute that was enacted in 1985, and we're talking about members of the parole board in 1994, 10 years later. And I think a reasonable— Do you think there's some institutional history that goes there? There could be, but I'm not sure that a current parole board member would be held to know legislative history from 10 years ago. Well, I thought—they didn't attempt to apply the later enacted statute about can't refuse to him. They didn't cite that in his denial. Are you talking about ORS 144? Yes. They did cite that. In the denial, they cited SB whatever it is. That is the original order. There was a later order that was issued. When they denied it, did they rely upon the SB? Right. There were a couple of orders. The reason why that's a little bit confusing is there's a couple of orders. There's one that went to the Court of Appeals and then was withdrawn, and then they issued a new order. But in response to Bollinger's request to refuse parole that he made at several points in the process, the board did say that you don't have a right to refuse parole under ORS 144. Oh, I see. In the later one, when he filed a motion to reconsider—what did he file? The motion filed another request. Yeah, an administrative request. And then they said those requests would be on the 45 days from the 2194 board action. ORS 144.2453 states in no case that he says you have a right to refuse an order granting imprisonment at least a point in the law. But they knew that that didn't apply to him. No, no. Our position is that it's not an ex post facto problem because under the law in effect, when he committed his crimes, he never had a right to refuse parole. I see my time is up, unless the Court has any further questions. No. Thank you. I'll give you a minute to rebut. Nothing? Okay. Matter submitted. Thank you very much. We appreciate your argument. Thank you.
judges: Brunetti, Tashima, Paez